# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

MELISSA MATTHEWS,

    PLAINTIFF,

v.                                  CASE NO.:

GULF POWER,

    DEFENDANT.
_____/

## **COMPLAINT**

Plaintiff, Melissa Matthews, (hereinafter referred to as the "Plaintiff" or "Matthews"), by and through the undersigned counsel, sues the Defendant, Gulf Power. (hereinafter referred to as the "Defendant" or "Gulf Power"), and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action for discrimination and interference in violation of her federally protected rights under the Family Medical Leave Act, 29 U.S.C.S. §§ 2601; 2611-2654; and Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203.

## JURISDICTION AND VENUE

2. The jurisdiction of the Court over this controversy is invoked pursuant to 29 U.S.C. § 2617(a)(2) and 42 U.S.C. §§ 12111-12117, 12203.

1

3. Defendant is considered an employer within the terms and conditions of the 29 USC §§ 2611 et seq. ("FMLA"), as Defendant was both engaged in commerce or in an industry or activity affecting commerce and employed more than 50 employees for each working day during each of 20 or more calendar weeks in each calendar year relevant hereto within a seventy-five (75) mile radius of Plaintiff's Pensacola, Florida worksite.

4. Plaintiff worked for Defendant from September 20, 2008 until February 11, 2020. Plaintiff is considered an "eligible employee" for purposes of the FMLA as she has been employed: (1) for at least 12 months by Defendant, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

5. The FMLA does not contain an exhaustion requirement and Plaintiff is not required to exhaust administrative remedies before bringing suit.

6. This action lies in the Northern District of Florida, Pensacola Division, because the action arose in this judicial district.

7. Plaintiff has complied with all conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and the Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes. On March 24, 2020, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" No.:

202024511) and the United States Equal Employment Opportunity Commission ("EEOC" No.: 15D-2020-00763). On September 18, 2020, the FCHR issued a determination pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested her ninety (90) day Notice of Right to Sue letter from the EEOC which was received on January 14, 2021.

## PARTIES

8. Plaintiff a citizen of the State of Florida who resides in Santa Rosa County, Milton, Florida.

9. Defendant, Gulf Power, is a private for profit business and subsidiary of NextEra Energy, Inc. that is licensed to do and does business in the Escambia, County.

## FACTS

10. Plaintiff is a Caucasian female.

11. Plaintiff was employed by Defendant as an Accountant from September 20, 2008, to February 11, 2020.

12. During Plaintiff's employment with defendant, she performed the duties and responsibilities of her position in an exceptional manner and was not the subject of any disciplinary issues.

13. During Plaintiff's employment with defendant, she performed the duties and responsibilities of her position in an exceptional manner and was not the

subject of any disciplinary issues.

14. Plaintiff suffers from severe migraines.

15. In January 2019, when Gulf Power was purchased by Next Era Energy, Plaintiff's work load and stress level was unbearable.

16. Plaintiff worked many late hours trying to get Gulf Power Accounting system updated and correct for a whole new set of software.

17. Plaintiff had multiple discussions with management about how bad her migraines were becoming, but none of her workload was ever reduced nor did management discuss her FMLA rights with her.

18. Defendant did not accommodate a flexible schedule to help with Plaintiff's migraines.

19. Plaintiff was getting migraines at least twice a week. There were lots of times where she came to work with a migraine, wearing sunglasses and turning off lights around her desk and dimming the computer light.

20. Plaintiff would call in, email, or text management when she got a morning migraine informing them that she would be in later, normally around noon.

21. Plaintiff's managers sometimes would not inform her when they were out of the office, so she did not know if they received her calls or emails.

22. Around October 2019, Plaintiff was pulled into a meeting with her

boss, April Epperson, and Human Resources representative, Kim Sweat, where they discussed her attendance and migraines.

23. Despite Defendant having known about Plaintiff's migraines for several months, it was not until late October 2020 that Defendant first informed Plaintiff that her migraines should be covered by FMLA and then gave her FMLA paperwork to be filled out by her doctor.

24. Plaintiff followed Defendant's instructions, had the FMLA paperwork filled out by her doctor and returned in the time allotted by Defendant.

25. Plaintiff never heard from HR or management again nor did she receive any guidance on what she needed to do after that related to her migraines or FMLA status.

26. Defendant knew that Plaintiff's prior absences were related to her migraines, which are an FMLA qualifying health condition.

27. On January 24, 2020, Plaintiff was informed by April Epperson that she was being suspended with pay.

28. Plaintiff was told that HR would call her in a few days.

29. Plaintiff didn't receive anything until about two weeks later, when she texted her boss for any type of update and was told that she was 'working with HR, hopefully tomorrow, or early next week', that was on Thursday, January 30, 2020.

30. The next day all Plaintiff's IT work related material on her cell phone

were deleted and she did not receive an answer as to why.

31. Plaintiff texted her boss right after the data was deleted but never received an answer.

32. Plaintiff finally received a call from her manager the following Friday (8 days) later to come into the office, Tuesday, February 11, 2020, for a sit down meeting.

33. On February 11, 2020, Plaintiff was brought in for a meeting by HR and management.

34. During this meeting, Plaintiff's employment with Defendant was terminated and she was instructed to leave the building.

35. Prior to filing for FMLA benefits, Plaintiff never received any write ups or disciplinary actions.

FIRST CAUSE OF ACTION
*DISABILITY DISCRIMINATION*
*AMERICANS WITH DISABILITIES ACT, (ADA)*

36. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 6 through 35 of this complaint with the same force and effect as if set forth herein.

37. The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

38.     At all times material hereto, Plaintiff was an employee of Defendant and Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), as the Defendant employed more than 15 employees.

39.     As such, Defendant is prohibited from discriminating against any qualified individual with a disability.

40.     Plaintiff is, and was at all time pertinent hereto, a qualified individual with a disability.

41.     Plaintiff suffers from migraines which is a mental health condition.

42.     Migraine symptoms can be triggered by normal, everyday occurrences, such as a co-worker's perfume, fluorescent lights, or stress, and the pain can be severe enough to require bed rest in a dark, quiet place.

43.     Plaintiff's migraines resulted in her not being able to function, forcing her to miss work.

44.     Plaintiff experienced migraines episodes one or more times a week, significantly limiting her ability to lead a normal life, and sustain a sense of well-being.

45.     Migraines can last for months or even years, and interfere with day-to-day functioning.

46. Plaintiff's migraines are an impairment and disability within the meaning of the ADA as it substantially limits Plaintiff's ability to perform major life activities as compared to most people in the general population.

47. Plaintiff's migraines substantially limited her ability to perform the major life function of speaking, breathing, learning, and reading, concentrating, thinking, communicating, and working.

48. Upon learning of Plaintiff's migraines and requested accommodations, Defendant was under an obligation to engage in a good faith interactive process with Plaintiff to determine the reasonableness of her requested accommodation.

49. Defendant failed to engage in a good faith dialogue with Plaintiff in an attempt to "identify the precise limitations" caused by Plaintiff's migraines nor did Defendant "explore potential accommodations" to overcome those limitations.

50. Defendant's termination and disqualification of Plaintiff's employment on February 11, 2020, on the basis of her disability and Defendant's failure to make a good faith individual assessment to determine whether Plaintiff could be employed or whether a reasonable accommodations would enable her to be employed by Defendant, violated the ADA.

51. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to her termination is entirely *pretextual* for

Defendant's retaliation and discrimination against her for engaging in a protective activity and for any actual or perceived disability.

52. The adverse personnel action, the termination of Plaintiff's employment, clearly violated her statutory protected rights and constituted a prohibited employment practice, contrary to the public policy of the under the Americans with Disabilities Act, (ADA).

53. As a result of the Defendant's violations of the ADA, Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon mental, psychological and emotional distress, and anxiety from difficult economic circumstances, resulting from his unlawful discharge.

## SECOND CAUSE OF ACTION
*DISABILITY RETALIATION*
*AMERICANS WITH DISABILITIES ACT, (ADA)*

54. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 6 through 35 of this complaint with the same force and effect as if set forth herein.

55. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from retaliating against qualified individuals for objecting to discriminatory acts or for requesting an accommodation.

56. Defendant terminated and disqualified Plaintiff from her employment

in retaliation for questioning and objecting to Defendant's failure to discuss her accommodation requests and for requesting an accommodation.

57. Defendant acknowledged and regarded Plaintiff as disabled (perceived or otherwise) and as having an impairment.

58. When Plaintiff provided Defendant with sufficient information regarding her migraines and requested a reasonable good faith accommodation, Plaintiff's requests became and were considered a statutorily protected activity under the ADA.

59. Plaintiff questioned and objected to Defendant's failure to reasonably discuss her accommodation requests.

60. Defendant's February 11, 2020, termination and disqualification of Plaintiff's employment was in retaliation for her seeking a good faith accommodation, her objecting to Defendant's discriminatory practices regarding her disability and requested accommodation, constituted a statutory protected activity and a prohibited employment practice, contrary to the public policy of and in violation of the ADA.

61. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to her termination is entirely *pretextual* for Defendant's retaliation against her for engaging in the statutory protective activity of requesting a reasonable accommodation.

## THIRD CAUSE OF ACTION
(FMLA INTERFERENCE)

62. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 3 through 6 and 8 through 35 of this complaint with the same force and effect as if set forth herein.

63. "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

64. Plaintiff was an employee entitled to a benefit under the FMLA and Defendant denied her that benefit.

65. At the time of Plaintiff's termination, Defendant had more than sufficient knowledge that Plaintiff entitled to FMLA leave.

66. Defendant had more than sufficient knowledge that her migraines were a serious health condition and an FMLA-qualifying medical condition.

67. Defendant knew of Plaintiff's qualifying medical condition and refused to discuss any type of FMLA leave.

68. Defendant should have notified Plaintiff of her eligibility to take FMLA leave for her migraines within five business days.

69. The FMLA required Defendant to give Plaintiff written notice detailing her specific expectations and obligations related to the FMLA and explaining any consequences of her failure to meet these obligations.

70. Defendant never provided Plaintiff with any type of written notice regarding her FMLA rights related to her migraines, thus interfering with and denying her substantive rights under the FMLA.

71. Defendant terminated Plaintiff for poor attendance and absences which were related to her FMLA qualifying migraines.

72. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

73. Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

## THIRD CAUSE OF ACTION
(FMLA Retaliation)

74. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 3 through 6 and 8 through 35 of this complaint with the same force and effect as if set forth herein.

75. It shall be unlawful for any employer to retaliate against an employee for exercising or attempting to exercise, any right provided under the FMLA.

76. Plaintiff was an employee entitled to a benefit under the FMLA and Defendant denied her that benefit.

77. At the time of Plaintiff's termination, Defendant had more than

sufficient knowledge that Plaintiff was entitled to FMLA leave.

78. Defendant had more than sufficient knowledge that her migraines were a serious health condition and an FMLA-qualifying medical condition.

79. Defendant knew of Plaintiff's qualifying medical condition and refused to discuss any type of FMLA leave after Plaintiff returned her FMLA paperwork.

80. The FMLA required Defendant to give Plaintiff written notice detailing her specific expectations and obligations related to the FMLA and explaining any consequences of her failure to meet these obligations.

81. Defendant never provided Plaintiff with any type of written notice regarding her FMLA rights related to her migraines.

82. Defendant terminated Plaintiff after having submitted her FMLA paperwork for poor attendance and absences which were related to her FMLA qualifying migraines.

83. Plaintiff's termination was in retaliation for engaging her statutory protected rights under the FMLA.

*84.* Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

85.	Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

a)	Declaring the acts and practices complained of herein are violation of the FMLA and ADA;

b)	Enjoining and permanently restraining those violations of the FMLA and ADA;

c)	Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

d)	Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to the ADA and/or FMLA;

e)	Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory treatment of her and make her whole for all earnings she would have received but for Defendant's discriminatory treatment, statutory damages for lost wages, benefits, and

other compensation, plus interest thereon at the statutory rate, pursuant to the FMLA and ADA;

f) Awarding compensatory damages in the amount of the above-requested award, pursuant to the ADA;

g) Plaintiff further seeks declaratory, injunctive, and equitable relief pursuant to the ADA and FMLA;

h) Awarding liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(iii);

i) Awarding Plaintiff attorney's fees, expert witness fees, and costs of this action, pursuant to the ADA, FMLA and Fed. R. Civ. P. 54 and such other relief as this Court may deem just and proper;

j) Granting such other and further relief, equitable or otherwise, as the Court deems just and proper in the premises.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: January 31, 2022.    By: */s/ Clayton M. Connors*
CLAYTON M. CONNORS
Florida Bar No.: 0095553
Email: cmc@westconlaw.com
**THE LAW OFFICES OF**
**CLAYTON M. CONNORS, PLLC.**
4400 Bayou Blvd., Suite 32A
Pensacola, Florida 32503

Tel:  (850) 473-0401
Fax: (850) 473-1388
*Attorney for Plaintiff*